# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| MICHELLE L. DOWDEN, | |
| Plaintiff, | No. 19-CV-2054-KEM |
| vs. | **MEMORANDUM OPINION AND ORDER** |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Michelle L. Dowden seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Dowden argues that the administrative law judge (ALJ) erred in formulating her residual functional capacity (RFC) by discounting her subjective complaints related to her physical limitations; discounting the opinion of her treating rheumatologist; and failing to include a limitation to one- and two-step tasks, as found by the state agency psychological consultants, whose opinions the ALJ found persuasive. Dowden also raises (for the first time) an Appointments Clause challenge in reliance on *Lucia v. SEC*, 138 S. Ct. 2044 (2018). I **reverse** the Commissioner's decision.

## I.     BACKGROUND[1]

Dowden, born in 1978, graduated high school without special-education classes and completed two years of college (but did not finish due to being restricted to bed rest

---

[1] The parties have provided a more thorough overview of the treatment records in the Joint

during a pregnancy). AR 31-34, 42, 886.[2] Over the years, she has held a variety of hourly positions, including self-employed house cleaner and several positions in the telemarketing and the fast food industries. AR 34-40, 261, 264-66, 287-88. She reported changing jobs when she wanted "better pay and benefits" but that she primarily lost jobs "due to being a single mother and not always having access to [daycare]." AR 886-87. She last worked at a Panera Bread; she was fired in October 2016 when she missed a shift without giving the required amount of notice because her son was sick and she needed to stay home with him. *Id.*; *see also* AR 43, 264, 874. She reported applying to other jobs when her employment with Panera Bread ended, but she received no interviews. AR 887.

In April 2017, Dowden visited her primary care provider, complaining of red spots on her skin, achiness, tingling in her extremities, and forgetfulness. Doc. 12. Bloodwork revealed an elevated rheumatoid factor, and Dowden was referred to rheumatologist Claro Palma, MD. *Id.* Dr. Palma diagnosed Dowden with dermatomyositis (*id.*), "a connective tissue disease characterized by muscle inflammation and severe skin rashes." ***Condon v. Astrue***, 780 F. Supp. 2d 831, 833 n.3 (N.D. Iowa 2011).

> Symptoms of the disease include difficulty swallowing; muscle weakness, stiffness, or soreness; purple or violet-colored upper eyelids; purple-red skin rashes; and shortness of breath. Some sufferers of the disease develop a rash without muscle weakness; this is called dermatomyositis sine myositis. Dermatomyositis is a progressive disease, meaning it is generally expected to worsen and spread over time.

*Id.* (citations omitted). When Dowden continued to suffer symptoms after being prescribed a daily steroid (prednisone), she asked her primary care provider about applying for disability, and her provider advised her to contact the Social Security office. Doc. 12.

---

Statement of Facts (Doc. 12).

[2] "AR" refers to the administrative record, filed at Doc. 9.

Dowden filed applications for DI and SSI benefits in July 2017, alleging disability since June 1, 2017, based on "dermatomycitis with [anti]bodies J1, rheumatoid arthritis, lung inflammation, vitamin D deficiency, abnormal liver function, anxiety, [and] polyps in colon." AR 79-80. The Social Security Administration referred her for a psychological consultative examination, and Dowden met with psychologist Christine Guevara, PhD, in October 2017. AR 884-87. After receiving the report from Dr. Guevara, the Social Security Administration denied Dowden's DI and SSI applications on initial review in October 2017 and on reconsideration in December 2017. AR 79-148. In connection with those reviews, nonexamining state agency consultants Matthew Byrnes, DO, and Laura Griffith, DO, evaluated Dowden's physical RFC, and Jonathan Brandon, PhD, and Vincent Marziano, PhD, evaluated Dowden's mental RFC.[3] AR 86-91, 123-28.

Dowden requested review before an ALJ. On February 27, 2019, the ALJ held a video hearing, at which Dowden and a vocational expert (VE) testified. AR 10, 28. On March 12, 2019, the ALJ issued a written decision following the familiar five-step process outlined in the regulations[4] to determine Dowden was not disabled from June 2017 through the date of the decision. AR 10-22. The ALJ found Dowden suffered from the following severe impairments: chronic infections of skin or mucous membranes, inflammatory arthritis, myofascial pain syndrome, depression, anxiety, personality

---

[3] RFC means "the most that a claimant can do despite her limitations." **Sloan v. Saul**, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. § 416.945(a)(1)**).

[4] "The five-part test is whether the claimant is (1) currently employed and (2) severely impaired; (3) whether the impairment is or approximates a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." **King v. Astrue**, 564 F.3d 978, 979 n.2 (8th Cir. 2009); *see also* **20 C.F.R. §§ 404.1520(a)(4), 416.920**. The burden of persuasion always lies with the claimant to prove disability, but during the fifth step, the burden of production shifts to the Commissioner to demonstrate "that the claimant retains the RFC to do other kinds of work[] and . . . that other work exists." **Goff v. Barnhart**, 421 F.3d 785, 790 (8th Cir. 2005) (quoting **Eichelberger v. Barnhart**, 390 F.3d 584, 591 (8th Cir. 2004)).

disorder, and posttraumatic stress disorder (PTSD). AR 12. Despite her impairments, the ALJ found that Dowden retained the following RFC:

> [Dowden] has the [RFC] to perform light work . . . except she could never climb ladders, ropes or scaffolds; could occasionally balance, stoop, kneel, crouch, crawl or climb ramps or stairs. The claimant should avoid concentrated exposure to extremes of cold. She would be limited to simple unskilled work tasks with no more than occasional simple work-related decisions, problem solving and use of independent judgment. She could tolerate frequent but not constant interactions with the general public. The person may be off-task or work at a slow pace for as much as five percent of the workday due to limitations in maintaining focus, attention and concentration.

AR 14. The ALJ found that Dowden could not perform her past work, but that other jobs existed in significant numbers Dowden could perform, including garment sorter, folder, and routing clerk. AR 20-21. Thus, the ALJ determined that Dowden was not disabled. AR 22.

Dowden appealed. The Appeals Council denied Dowden's request for review on May 29, 2019 (AR 1-3), making the ALJ's decision the final decision of the Commissioner. *See* **20 C.F.R. §§ 404.981, 416.1481**. Dowden filed a timely complaint in this court seeking judicial review of the Commissioner's decision (Docs. 1, 4). *See* **20 C.F.R. § 422.210(c)**. The parties briefed the issues (Docs. 12-15) and consented to the exercise of jurisdiction by a United States magistrate judge (Doc. 11).

## II. DISCUSSION

A court must affirm the ALJ's decision if it "is supported by substantial evidence in the record as a whole." ***Kirby v. Astrue***, 500 F.3d 705, 707 (8th Cir. 2007); *see also* **42 U.S.C. § 405(g)**. "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." ***Kirby***, 500 F.3d at 707. The court "do[es] not reweigh the evidence or review the factual record de novo." ***Naber v. Shalala***, 22 F.3d 186, 188 (8th Cir. 1994). If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of

4

those positions represents the [ALJ's] findings, [the court] must affirm the decision." ***Robinson v. Sullivan***, 956 F.2d 836, 838 (8th Cir. 1992).

Dowden argues that the ALJ erred in discrediting her testimony of her symptoms and Dr. Palma's physical RFC opinion. Dowden also argues that the ALJ erred in evaluating the opinions of the state agency psychological consultants; the ALJ suggested agreement with those opinions but failed to adopt (or explain the failure to adopt) a mental RFC limitation included by the state agency psychological consultants. Finally, Dowden argues that the ALJ's appointment to that position violates the Appointments Clause of the United States Constitution.

### A. *Subjective Complaints*

When evaluating the credibility of a claimant's subjective complaints—including pain or nervousness—the ALJ must consider the factors set forth in *Polaski v. Heckler*: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." ***Black v. Apfel***, 143 F.3d 383, 386 (8th Cir. 1998); *accord* ***Polaski***, 739 F.2d 1320, 1321-22 (8th Cir. 1984), *vacated*, 476 U.S. 1167 (1986), *reinstated*,[5] 804 F.2d 456 (8th Cir. 1986). "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." ***Black***, 143 F.3d at 386. The ALJ may not discredit the claimant's allegations based solely on the absence of objective medical evidence, but the ALJ may rest his credibility finding on "objective medical evidence to the contrary," ***Ramirez v. Barnhart***, 292 F.3d 576, 581 (8th Cir. 2002); or "inconsistencies in the record as a whole," ***Brockman v. Sullivan***, 987 F.2d 1344, 1346 (8th Cir. 1993). Courts must "defer to an ALJ's credibility finding as long as the 'ALJ explicitly discredits a claimant's

---

[5] The court did not explicitly say that it was reinstating the original *Polaski* opinion, but the Eighth Circuit has recognized that it "effectively reinstat[ed]" *Polaski*. ***Jones v. Callahan***, 122 F.3d 1148, 1151 n.3 (8th Cir. 1997).

5

testimony and gives a good reason for doing so.'" *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (quoting *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001)).

Dowden argues that the ALJ did not give good reasons for discounting her subjective complaints related to her physical limitations. At the hearing in February 2019, Dowden testified that she is unable to drive because of drowsiness from her medications and muscle spasms in her hands and feet. AR 41-42. She stated she stopped driving in May 2017. AR 50. The ALJ noted, however, that she reported being able to drive in function reports submitted to the Social Security Administration in September and November 2017. AR 47, 303, 330 (checking boxes indicating she could both drive a car and ride in a car); *see also* AR 313. A treatment record from September 2017 also reflected that she reported her "current level of function" including the ability to "drive[] kids." AR 874.

Dowden testified at the hearing that she can only stand for twenty to thirty minutes at a time before her legs give out. AR 50. She similarly reported in function reports completed in the fall of 2017 that she could walk for only twenty minutes or two blocks before needing to rest. AR 310, 315, 332. She testified at the hearing that a "usual day" consisted mostly of lying on the couch and watching television and that she "typically" is not able to do any housework. AR 56. The ALJ found Dowden's testimony inconsistent with activities of daily living reflected in function reports in September and November 2017. AR 17-18. In those, Dowden reported making easily prepared meals (such as frozen dinners or things from boxes and cans) that took thirty minutes to an hour to prepare; grocery shopping once a week for one to two hours at a time; caring for her young children (including a toddler); and doing housework with breaks—such as vacuuming, laundry, loading the dishwasher, and wiping countertops and tables—for a total of two to three hours a day. AR 48, 310-13, 328-30; *see also* AR 983 (treatment record reflects Dowden reported being "active with her children" in May 2018).

6

"Significant daily activities may be inconsistent with claims of disabling pain," *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005); but the ALJ must consider the claimant's limitations in performing these activities and their "quality, frequency, and independence," *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005). Dowden argues that her activities of daily living were more limited than found by the ALJ. She points to her daughter's third-party function report, in which she stated Dowden "rarely cooks," and Dowden's function reports noting she is not able to cook more involved meals like she used to. AR 302, 304, 312, 329. But substantial evidence supports the ALJ's conclusion that Dowden continues to cook daily, albeit easier meals, and that she spends thirty minutes to an hour preparing meals. AR 18, 312, 329. Dowden also suggests that the ALJ failed to recognize that she reported taking breaks during housework. But the ALJ could find Dowden's reports of doing housework inconsistent with her testimony that she is unable to do any housework (with or without breaks); the ALJ did not necessarily find Dowden's ability to do housework inconsistent with her testimony regarding her standing and walking limitations, as Dowden suggests. The treatment records do not reflect that Dowden deteriorated from fall 2017, when she completed the function reports, to the time of the hearing in February 2019. *See* AR 15-18; Doc. 12. Substantial evidence supports the ALJ's conclusion that Dowden's activities of daily living reported in her function reports are inconsistent with her testimony that she spends most days lying on the couch, unable to move.[6]

---

[6] When the ALJ questioned Dowden at the hearing on her ability to grocery shop, she reported using a motorized cart. AR 50-51. The ALJ suggested that this statement was inconsistent with her failure to check that she uses crutches, a walker, a wheelchair, a cane, or "other" in a different section of her function report. *See* AR 51-52. Although I agree with Dowden that the use of a motorized cart grocery shopping is not inconsistent with failing to check she uses a wheelchair or "other," the ALJ did not have to accept Dowden's hearing testimony that she uses a motorized cart to grocery shop, when the use of a motorized cart was not noted in her function report and (as the ALJ noted) Dowden's hearing testimony of her activities of daily living differed widely from her function reports.

7

The ALJ also found that "[t]he medical treatment notes did not reflect th[e] severe restriction" of spending most of the day "lying on the couch . . . due to back spasms," as Dowden testified. AR 18, 55-56, 298, 310 (Dowden testified that she spent most of the day lying on the couch; she stated in follow-up that she was unable to sit because it caused painful spasms; and she reported in function reports in fall 2017 that sitting for long periods caused back spasms). Dowden notes that the treatment records routinely reflect complaints of fatigue. *See* AR 371, 375, 379, 798, 801, 804, 807, 810, 905, 924-25, 928, 947, 975-76, 979-80, 984, 988, 992, 994. But Dowden testified that her inability to sit was based on back spasms, not fatigue (she also testified to suffering a back spasm during the hearing (AR 38)). The treatment records do not reflect that Dowden complained of back spasms very often or that providers observed back spasms on objective examination. In September 2017, at a physical therapy appointment, Dowden reported suffering muscle spasms since February 2017, and she suffered a spasm as the result of one of the exercises (which was discontinued at the next appointment). AR 873-74. In April 2018, Dowden told Dr. Palma that she continued to suffer frequent muscle spasms in her lower back (as the ALJ noted, she also reported at that appointment missing doses of prednisone). AR 15-16, 987. In addition, a treatment record from December 2017 reflected that Dowden was able to "sit[] for several hours" for a class, although she reported this sitting was "very uncomfortable" and caused worsened functionality the next day (she needed assistance to put her coat on, and the provider noted antalgic gait on objective examination). AR 922, 924. Overall, however, the treatment records do not reflect that Dowden complained of an inability to sit due to back spasms or that providers observed difficulties sitting (although multiple treatment records reflect that she suffered difficulties rising from a sitting to standing position at times (AR 376, 905, 922, 924)). The ALJ could decide based on the treatment records not to credit Dowden's testimony that she cannot sit due to back spasms and spends most of the day lying down.

The ALJ also noted that Dowden testified that she is not able to use her muscles and that the more she uses her muscles, the more they break down. AR 18, 48, 57. The ALJ found a complete inability to use her muscles inconsistent with the treatment records, noting that Dr. Palma recommended regular stretching and aerobic exercise in September 2018. AR 18; Doc. 12. Dr. Palma also noted in December 2018 that Dowden should avoid activities that increase her symptoms (supporting that Dowden suffers limitations but also that Dowden retains the ability to perform some activities). *See* Doc. 12. Overall, the ALJ gave good reasons, supported by substantial evidence, for not fully crediting the extreme limitations testified to by Dowden.

### B. Weight to Dr. Palma's Medical Opinion

Dowden challenges the ALJ's evaluation of Dr. Palma's RFC opinion. For claims filed after March 2017 (like Dowden's), the ALJ no longer "assign[s] a specific weight to medical opinions." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, **82 Fed. Reg. 5844**, 5858 (Jan. 18, 2017); *see also* **20 C.F.R. §§ 404.1520c(a), 416.920c(a)**. Instead, the ALJ "evaluate[s] the persuasiveness of medical opinions" considering the following factors: (1) supportability, i.e., "the objective medical evidence and supporting explanations presented by a medical source" in support of his or her opinion; (2) consistency with "evidence from other medical sources and nonmedical sources"; (3) the relationship between the opinion's author and the claimant, such as whether the opinion is from a treating source; (4) whether the medical opinion is by a specialist; and (5) "other factors that tend to support or contradict a medical opinion," such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the Social Security Administration's] policies and evidentiary requirements." **20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c)**. The first two factors, supportability and consistency, are the most important. **20 C.F.R. §§ 404.1520c(a), 416.920c(a)**. The ALJ is required to "articulate how [the ALJ]

9

considered the medical opinions" and "explain how [the ALJ] considered the supportability and consistency factors." **20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2)**.

Dr. Palma became Dowden's treating rheumatologist in May 2017, and he treated Dowden every two to three months during the relevant time period. *See* Doc. 12. In February 2019, Dr. Palma completed a form evaluating Dowden's functional limitations. AR 1051-55. Dr. Palma opined that Dowden could walk one city block without rest, stand for fifteen minutes at a time, and sit for thirty minutes at a time. AR 1053. Dr. Palma opined that in total, Dowden could sit for six hours in an eight-hour workday and stand for less than two hours. *Id.* Dr. Palma opined that Dowden needed to be able to shift positions at will and walk for five minutes every hour. *Id.* Dr. Palma found Dowden could occasionally lift ten pounds, but never more than that. AR 1054. Dr. Palma did not think that Dowden had any limitations with regard to handling or fingering, but he did limit the use of her arms for reaching (including overhead reaching) to 25% of the workday. *Id.* As support for his opinion, Dr. Palma noted that Dowden suffered dermatomyositis (which he noted can wax and wane), myofascial pain, and hypermobile joint syndrome; that her symptoms included muscle aching, weakness, legs buckling, difficulty swallowing, and fatigue; and that "clinical findings and objective signs" included muscle weakness, "loose ligaments," and elevated aldolase and CPK (creatine phosphokinase). AR 1051.

The ALJ found Dr. Palma's opinion "not persuasive." AR 18. The ALJ explained:

> Dr. Palma's responses are curt and conclusory on a pre-prepared form. Dr. Palma did not support h[is] opinion with sufficient citation to laboratory findings. The narrative reasoning or internal supports are insufficient and it has minimal consistency with the medical evidence. As discussed above,

10

> Dr. Palma's treating notes do not reflect the same level of severity as identified in this questionnaire.

AR 18. Earlier in the opinion, the ALJ outlined Dr. Palma's treatment records, noting some months, Dowden reported improvement in her symptoms, while others, she reported worsening symptoms (often corresponding with missed medication doses). AR 15-16. The ALJ also noted Dr. Palma twice recommended physical therapy, but Dowden stopped attending after only a few sessions and never returned. *Id.* The ALJ also recited the following objective examinations of Dr. Palma's: in May 2017, Dr. Palma noted tenderness in multiple body parts, crepitus, swelling in her right knee and ankle, and normal range of motion except in her left hip; in September 2017, Dr. Palma noted decreased tenderness and swelling; and in December 2018, Dr. Palma observed tenderness in multiple body parts but a normal gait. *Id.*

Dowden argues that the ALJ ignored Dr. Palma's proffered support for his opinion. But substantial evidence supports the ALJ's finding that Dr. Palma's RFC opinion was not supported by his treatment records. First, although Dr. Palma cited "loose ligaments" as support for his opined limitations, his treatment records do not reflect loose ligaments on objective examination (nor do any other providers'). Dr. Palma's treatment records do reflect, however, that Dowden's monthly labs almost always revealed elevated CPK and aldolase levels, indicating muscle damage.[7] Dr. Palma

---

[7] Creatine Phosphokinase Test, *Mount Sinai*, https://www.mountsinai.org/health-library/tests/creatine-phosphokinase-test (last visited October 11, 2020); Aldolase blood test, *Mount Sinai*, https://www.mountsinai.org/health-library/tests/aldolase-blood-test (last visited October 11, 2020). These websites indicate 1 to 7.5 units per liter is a normal level of aldolase in the blood, and 10 to 120 micrograms per liter is a normal level of CPK. *Id.* Dowden's levels were as follows:
- May 2017: 2285 CPK, 60+ aldolase;
- June 2017: 5754 CPK;
- July 2017: 514 CPK;
- September 2017: 49 CPK, 8.1 aldolase;
- November 2017: 458 CPK, 20 aldolase;
- February 2018: 1583 CPK, 46.8 aldolase;

11

also routinely measured Dowden's muscle strength in her upper and lower extremities as 4/5 (with 5/5 being full strength), indicating "reduced muscle strength" but that the patient "can still move joints against some resistance." ***Killian v. Colvin***, No. 1:15 CV 57 DDN, 2016 WL 2986369, at *1 n.3 (E.D. Mo. May 24, 2016); *see* Doc. 12; AR 981, 985, 988; *see also* Doc. 12 (Dowden's primary care provider noted "mildly weaker strength for her age that was equal in all extremities" in April 2017). The ALJ could find, however, that the results of the examinations do not necessarily dictate that Dowden could stand for less than two hours and that she would need to shift positions at will, as opined by Dr. Palma. The ALJ followed the regulations to evaluate Dr. Palma's opinion and ultimately found Dowden less limited than Dr. Palma, considering the treatment records, Dowden's activities of daily living, and the opinions of the state agency medical consultants. Substantial evidence supports the ALJ's evaluation of Dr. Palma's medical opinion.

### C. Failure to Adopt Limitation Found by State Agency Psychological Consultants

Dowden argues that the ALJ erred by failing to adopt an RFC limitation included in the state agency psychological consultants' RFC opinions, or by otherwise failing to explain why the ALJ found Dowden less limited than the state agency psychological consultants. Dr. Brandon evaluated Dowden's mental RFC based on the evidence of record in October 2017. AR 89-91. Dr. Brandon found Dowden suffered moderate

- March 2018: 839 CPK, 26.2 aldolase;
- April 2018: 282 CPK, 13.5 aldolase;
- May 2018: 329 CPK, 16.7 aldolase;
- June 2018: 2129 CPK, 47.5 aldolase;
- September 2018: 3596 CPK, 65.6 aldolase;
- October 2018: 680 CPK, 26.2 aldolase;
- November 2018: 82 CPK, 7.4 aldolase.

AR 803, 809, 974-75.

12

limitations in the following areas: ability to understand, remember, and carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to work in coordination with or in proximity to others without being distracted by them; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and ability to interact appropriately with the general public. AR 89-90. Dr. Brandon concluded:

> The evidence indicates that the claimant will have some difficulty concentrating for extended periods, remembering, understanding, and carrying out detailed instructions, interruption to the ability to keep pace from psychologically-based symptoms, difficulty getting along with others at times, and will experience some distraction from others in the workplace. However, the claimant retains the capacity to perform simple, repetitive tasks consisting of 1-2 step commands in a work setting with reduced social interaction.

AR 91. In December 2017, Dr. Marziano affirmed Dr. Brandon's assessment. AR 126-28.

The ALJ found Dr. Brandon's and Dr. Marziano's opinions "persuasive," noting that they "supported their opinions with a thorough evaluation of the medical findings" and that "[t]he record supports these opinions." AR 19-20. The ALJ recognized that Drs. Brandon and Marziano limited Dowden to work involving "one to two step commands" (reasoning level one work),[8] but without explanation, the ALJ did not include this limitation in his mental RFC determination. AR 14, 19-20.

As noted above, the regulations require the ALJ to explain how persuasive the ALJ finds each medical opinion (including those from state agency consultants) and to explain the supportability and consistency of each opinion. **20 C.F.R. §§ 404.1520c(a), 416.920c(a)**. Here, the ALJ found Drs. Brandon's and Marziano's opinions well-supported and consistent with the evidence of record, and yet the ALJ failed to adopt one

---

[8] *See* **DOT, App. C**.

13

of their opined limitations. The Commissioner argues that the ALJ need not explain the failure to adopt a limitation from an opinion the ALJ states is well-supported and consistent with the record, and thus, the ALJ did not err. I disagree. Prior to the regulation change, courts routinely held that remand may be required when the ALJ assigned great weight to the opinion of a state agency consultant but without explanation, found the claimant less limited than the state agency consultant. *See Gann v. Berryhill*, 864 F.3d 947 (8th Cir. 2017) (holding that the ALJ erred by assigning "significant weight" to opinions of state agency consultants but failing to adopt some of their opined limitations); *Johnson v. Comm'r of Soc. Sec.*, No. 17-CV-3045-LTS, 2018 WL 4868986, at *5 (N.D. Iowa Aug. 27, 2018) (collecting cases from district courts in the Eighth Circuit remanding "when the ALJ purportedly g[ave] 'great weight' to the opinion of a state agency consultant but fail[ed] to adopt some of the limitations contained in that opinion without explanation"), *report and recommendation adopted,* 2018 WL 4489458 (Sept. 19, 2018); *see also Block v. Saul*, No. C18-118-LTS, 2020 WL 1505566, at *6-7 (N.D. Iowa Mar. 30, 2020) (noting that remand is not required when the ALJ assigns significant weight to the opinions of state agency consultants and fails to adopt one of their limitations as long as the ALJ's opinion as a whole "adequately articulate[s] reasons" for the failure).[9] The new regulations explicitly provide that the ALJ must

---

[9] Most of the cases cited by the Commissioner are distinguishable. Here, the limitation the ALJ failed to adopt is concrete, not vague. *Cf. Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) (opinion that claimant had difficulties managing diabetes and that diabetes affected ability to lift, carry, walk, stand, and withstand temperature extremes too vague). The ALJ's RFC determination does not account for the limitation "in different form"—as Dowden notes, the ALJ's RFC determination allows for the performance of jobs with a reasoning level of two, which is inconsistent with the state agency consultants' limitation to jobs with only one- or two-step tasks. *Cf. Kessler v. Colvin*, No. 15 CV 130 EJM, 2016 WL 3892417, at *2 (N.D. Iowa July 14, 2016) (ALJ incorporated opinion that claimant "could not stand for more than 20-30 minutes at a time" by finding claimant would need to change positions every thirty minutes, sitting for thirty minutes, then standing for thirty minutes, etc.). The ALJ did not explain the failure to adopt the limitation or give any reason for finding Dowden less limited than the state agency consultants. *Cf. Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007) (ALJ explicitly

explain how persuasive, supported, and consistent a medical opinion is (including a medical opinion from a state agency consultant). The purpose of this regulation would be undermined if the ALJ could state a medical opinion was persuasive, well-supported, and consistent with the record, without adopting the limitations contained in that opinion or otherwise addressing them.

Because the ALJ did not explain the failure to adopt the one-or-two-step-tasks limitation, it is unclear whether the ALJ believed his RFC determination captured this limitation, or whether the ALJ found this limitation unsupported or inconsistent with the record. Both Dowden and her daughter reported in function reports completed in fall 2017 that Dowden could follow written instructions well (as long as she was able to refer back to the instructions as needed), but that she had trouble following oral instructions due to forgetfulness. AR 305, 315, 332. Dr. Guevara, the consultative examiner, administered memory tests to Dowden in October 2017 and found "mild to moderate" impairment; she opined that Dowden could only "follow[] through on instructions" without limitation "if she t[ook] notes." AR 886-87. Dr. Palma also opined in his RFC

---

stated that the ALJ was not adopting one of the source's opined limitations as inconsistent with the record and other medical opinions); ***Cannady v. Colvin***, No. 4:14-cv-00372-NKL, 2015 WL 139762, at *5 (W.D. Mo. Jan. 12, 2015) (ALJ found claimant more limited than opinion ALJ assigned significant weight). Although an ALJ is not required to "mechanically list and reject every possible limitation," the cases cited for this proposition do not involve a limitation contained in a medical opinion—especially not one the ALJ found persuasive and well-supported by the record. *Cf.* ***McCoy v. Astrue***, 648 F.3d 605, 615 (8th Cir. 2011); ***Depover v. Barnhart***, 349 F.3d 563, 567 (8th Cir. 2003). Although *Murphy v. Berryhill* involved similar facts as this case, the argument was a bit different—the claimant argued the ALJ's RFC inherently incorporated the limitations in the state agency consultants' opinions (not that the ALJ erred by failing to do so). No. 18-CV-61-LRR, 2019 WL 1140235, at *15-16 (N.D. Iowa Mar. 12, 2019), *report and recommendation adopted*, 2019 WL 2372896, at *6 (Apr. 10, 2019). To the extent *Murphy* and *Nicolls v. Astrue*, 874 F. Supp. 2d 785, 801-02 (N.D. Iowa 2012), (also cited by the Commissioner) suggest that an ALJ need not explain the failure to adopt a limitation contained in a medical opinion that the ALJ states is persuasive and consistent with the record, the weight of authority (including a binding Eighth Circuit opinion) suggests a contrary approach.

opinion that Dowden suffered attention and concentration difficulties. AR 1052. Treatment records reflect that Dowden frequently complained of memory difficulties, and she was referred to a specialist, who opined that her memory problems stemmed from anxiety. *See* Doc. 12; AR 991. Dowden's primary care provider observed during a December 2017 appointment that Dowden frequently lost her train of thought and had trouble finding her words. Doc. 12. The ALJ did not address this evidence other than noting the specialist determined Dowden's "memory problems were secondary to anxiety." AR 16.

The state agency medical consultants, Dr. Guevara, and Dr. Palma all suggested that Dowden suffers memory issues, which is supported by the treatment notes and other evidence of record. Their opinions all support that Dowden would have difficulty following multiple-step instructions given orally without the ability to refer back to notes or written instructions. Substantial evidence does not support the ALJ's failure to include a limitation to jobs involving only one- or two-step tasks. *See also* **Hutsell v. Massanari**, 259 F.3d 707, 712 (8th Cir. 2001) (holding that an ALJ's RFC determination must be supported by some medical evidence from a medical professional). Remand is required for the ALJ to further address the state agency consultants' opinions.

### *D. Appointments Clause*

Dowden argues that the ALJ's appointment to that position violates the Appointments Clause of the United States Constitution. The Eighth Circuit recently ruled that a Social Security claimant forfeits an Appointments Clause challenge by failing to raise it before the Social Security Administration. **Davis v. Saul**, 963 F.3d 790, 794-95 (8th Cir. 2020), *petition for cert. filed*, 89 U.S.L.W. 3015 (U.S. Jul. 30, 2020) (No. 20-105). Because Dowden did not challenge the constitutionality of the ALJ's appointment at any point during the administrative proceedings, I find that Dowden forfeited her

Appointments Clause challenge. Dowden is not prohibited from raising the issue anew on remand, however.

### III. CONCLUSION

I **reverse** the decision of the Social Security Administration, enter judgment in favor of Dowden, and remand for further proceedings.

**IT IS SO ORDERED** this 3rd day of November, 2020.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa